LAURA MORROW PHILLIPS, Appellant, *v.* LINDA
JUNE MORROW (ANDERSON), Respondent.

No. 17982

August 25, 1988                              760 P.2d 115

*Douglas A. Watkins,* Las Vegas, for Appellant.

*R. Steven Young* and *Joel Selik,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Respondent Linda June Morrow Anderson ("Linda") and appellant Laura Morrow Phillips ("Laura") are both ex-wives of William Morrow. During their marriage, Laura and Morrow purchased a house. According to Laura, when she divorced Morrow, the divorce decree awarded her the house "on the condition that she pay to [Morrow] the sum of Seven Thousand dollars or one-third of the net value of the real estate, whichever is greater." Seventeen days after the divorce between Laura and Morrow, Linda recorded a child support judgment against the house. Over five years later, Linda attempted to execute on the house; Laura interposed a homestead exemption as a defense to Linda's judgment lien.

Pursuant to this court's ruling in Breedlove v. Breedlove, 100 Nev. 606, 691 P.2d 426 (1984), the district court ruled that Laura's homestead exemption could be disregarded and her house sold to satisfy Linda's child support judgment. On appeal, Laura claims that (1) under the rule of *Breedlove,* a balancing of the equities in the instant case requires a ruling in her favor, (2) the district court erred in finding that Morrow had an interest in the house at the time Linda recorded her judgment, and (3) the district court erred in failing to find the defense of laches.

First, in *Breedlove* we held that the homestead laws could not be used to protect a husband's second family at the expense of

depriving his first family of the support to which they are entitled. 100 Nev. at 609, 691 P.2d at 428. Laura argues that *Breedlove* requires a balancing of the equities. We agree. Indeed, our ruling in *Breedlove* was a result of our weighing the equities which, in that case, clearly fell in the first wife's favor. However, despite the sharp contrast in facts between *Breedlove* and the present case, we disagree that the equities of the present case require a ruling in favor of Laura. According to Laura, her divorce from Morrow granted her the house on the condition that she pay Morrow $7,000 or one-third of the value of the house—whichever was greater. Without doubt, this money owed to Morrow by Laura would have been sufficient to satisfy Linda's child support judgment.[1] However, subsequent to her divorce from Morrow, Laura effectively eliminated Linda's access to the "$7,000 fund" by allowing Morrow to continue living in the house, paying his bills, and forgiving unpaid child support payments—in return for Morrow's satisfaction of the debt owed to him by Laura. Accordingly, some two years after their divorce, Morrow quit-claimed to Laura his interest in the house. Under these facts, we conclude that the equities favor Linda. Were it not for Laura's actions, Linda would have had a viable source from which to satisfy her child support judgment.

Second, we are unpersuaded that the district court erred in ruling that Morrow had an interest in the house at the time Linda recorded her judgment. It is Laura who claims that the residence was awarded to her "on the condition that she pay Morrow $7,000 or one third of the net value of the home." This condition was not met at the time Linda recorded her judgment. Laura nonetheless argues that, even if Morrow's interest in the residence was not terminated upon their divorce, his interest was terminated by agreement prior to the recording of the judgment lien. We are persuaded that this agreement between Laura and Morrow occurred *after* Linda recorded her lien. According to Laura, in consideration of allowing Morrow to live rent free in the house several months *after* the divorce, paying certain of Morrow's bills, and excusing Morrow's failure to pay child support payments due to her, Morrow agreed that Laura's obligation under the divorce decree would be satisfied. These facts, as related by Laura, belie the notion that the agreement was made before Linda recorded her judgment. For example, by October 12, 1981 (the date Linda recorded her judgment), Morrow could

---

[1]The record notes that Linda's original judgment was for $4,089.00 and that as of September 24, 1986, the amount of the judgment—representing principal and interest, less the amount of satisfaction received—was $5,525.95.

not have been in arrears on any child support payments to Laura; *i.e.,* at that date there was no child support to be "forgiven." Furthermore, we note that it was almost two years after Linda recorded her judgment that Morrow, by quit-claim deed, conveyed his interest in the property to Laura.

Finally, we disagree with Laura's claim that the district court erred in failing to find the defense of laches. We have not been apprised of any case wherein a court has allowed the defense of laches as a bar to execution on a child support judgment. Primarily, Laura bases her laches argument on the claim that Linda could have satisfied her judgment had she continued her collection efforts against Morrow. That argument is unpersuasive. Laura simply bases her claim on Linda's *past* successful collection efforts. However, the facts, according to Laura, show that after she divorced Morrow, his financial situation was such that Laura advanced him money, paid his debts, collected no child support payments from him, and allowed him to live in the house for several months. Thus, while Laura may have improved the property and reduced her indebtedness thereon after her divorce from Morrow, we are unpersuaded that Linda's failure to continue her efforts to collect from Morrow supports a finding of laches.

Because Laura voluntarily participated in the dissipation of a discrete source of assets from which Linda could have satisfied her judgment against Morrow, the *Breedlove* rationale applies. The district court did not err in holding that Laura's residence is subject to Linda's judgment lien. Accordingly, we affirm the decision of the district court.[2]

---

[2]This appeal was previously dismissed in an unpublished order of this court. Appellant has since petitioned for rehearing. In the petition for rehearing, appellant requested that our decision be issued in a published opinion. Respondent has opposed appellant's petition for rehearing, but does not oppose appellant's request that our order be issued in a published opinion. Cause appearing, we deny appellant's petition for rehearing. Nevertheless, we hereby issue this opinion in place of our order dismissing this appeal filed on June 23, 1988.